```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHAN S. UMANA GARCIA,
Individually and on behalf of
all others similarly situated,

                        Plaintiffs,                              REPORT AND
                                                                 RECOMMENDATION
            -against-
                                                                 22-CV-02403 (LDH) (JMW)


JOHNNIE'S CAR WASH ON OAK INC.,
d/b/a JOHNNIE'S CAR WASH ON OAK,

                        Defendant.
-------------------------------------------------------------X
```

Lina Stillman
**Stillman Legal, P.C.**
42 Broadway
Ste 12th Floor
New York, NY 10004
*For Plaintiff*

Elizabeth Erin Schlissel
Andrew W. Singer
**Tannebaum Helpern Syracuse
& Hirschritt, LLP**
900 Third Avenue
New York, NY 10022
*For Defendant*

**WICKS,** Magistrate Judge:

## BACKGROUND

Plaintiff Umana Garcia brings this class action pursuant to the Fair Labor Standards Act, *see* 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), for alleged wage violations. (DE 1.) Plaintiff seeks damages for the relevant statutory period from January 2016 to the date of final judgment. (*Id.*) Plaintiff was an employee at the Defendant Johnnie's

1

Car Wash on Oak Inc.'s carwash. (*Id.*) Plaintiff claims to have regularly worked over forty hours per week. (*Id.*) Plaintiff states that the Defendant violated the FLSA and NYLL by failing to compensate him for overtime, taking improper wage deductions and credits against his wages, and failing to keep the required records. (*Id.*) The Defendant denies these allegations and claims to have provided Plaintiff with evidence that refutes several of them. (*Id.*)

On July 14, 2022, the parties moved in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), for approval of the parties' settlement agreement (DE 13), which was referred by the Hon. LaShann DeArcy Hall to the undersigned on July 15, 2022 (Electronic Order dated July 14, 2022). The Court reviewed the parties' submission in support of their motion for approval of the proposed settlement and found that the parties did not submit sufficient information to enable the Court to conduct a proper *Cheeks* review. (Electronic Order dated Sept. 14, 2022.) Particularly, the Court ordered the parties to supplement their submission with information regarding the employer's potential exposure to Plaintiff and evidence supporting the bases of estimates of Plaintiff's maximum possible recovery. (*Id.*) On September 21, 2022, the parties jointly submitted their supplemental materials in support of the motion for approval of the proposed settlement. (DE 14.)

After reviewing the supplemental materials, for the reasons that follow, the undersigned respectfully recommends that the motion for settlement approval be APPROVED.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i)  a notice of dismissal before the opposing party serves either an answer of a motion for summary judgment; or

   (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

  In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. *Cheeks*, 796 F.3d at 206. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

  "Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted) ("*Wolinsky* Factors").

  Factors weighing *against* settlement approval include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same

3

employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement" (citing 29 U.S.C. § 216(b)).

Where a court "concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher v. SD Protec. Inc.*, 948 F.3d 593, 597 (2d Cir. 2020). That is, it is not this Court's role to "blue pencil" or modify the proposed

4

agreement. Rather, the Court's role is simply to assess the terms of the proposed settlement to ensure that the agreement is fair and reasonable. *Wolinsky*, 900 F. Supp. 2d at 335 ("[B]efore a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable."). It is against this backdrop, that the undersigned reviewed the proposed settlement.

## DISCUSSION

Nearly three months after the commencement of this action, the parties filed and executed their proposed settlement agreement on July 14, 2022. (DE 1; DE 13-1.) In executing the agreement, the parties stipulated that all claims in this suit would be dismissed with prejudice against the Defendants. Further, the parties agreed that if the settlement is approved by this Court, the Defendant would pay $10,000 to compensate Plaintiff in exchange for the dismissal of this suit. (DE 13.) Plaintiff's counsel would receive $3,000 from the total settlement amount as attorney's fees, representing a third (33.3%) of the settlement amount as agreed upon in the Plaintiff's retainer agreement. (*Id.*)

For the reasons set forth below, the Court finds that the terms of the settlement are generally fair, reasonable, and pass muster under *Cheeks*. Though the settlement agreement contains a problematic release provision that is unacceptable as written, the undersigned respectfully recommends that the motion for settlement approval be approved with the limitation on the release stated herein.

### I. The *Wolinsky* Factors Favor Approval

Based upon the parties' submissions—request for settlement approval, the executed settlement agreement, an executed Stipulation of Dismissal with Prejudice, and Plaintiff's counsel's timesheets—the Court finds that the *Wolinksy* factors favor approval.

5

### A. Plaintiff's Range of Possible Recovery

*First*, the settlement agreement provides for a total payment of $10,000, approximately two-thirds of which will be paid to Plaintiff as compensation for wage and hour claims, including back wages, liquidated damages, and interest. (DE 13.) According to the damages calculations provided in Plaintiff's Amended Fairness Letter, the Plaintiff estimates that he is entitled to $27,440.00 for the entirety of his time working for Defendants. (DE 14.) However, in reaching this settlement, Plaintiff acknowledges that while he believes he can obtain more money in this matter, he prefers this agreed-upon settlement to avoid the uncertainties of litigation. (DE 13.)

Further, Plaintiff acknowledges that there are risks in proceeding with litigation, as well as significant burdens and expenses associated with establishing his positions at trial. (*Id.*) The Court finds that payment of $10,000 to Plaintiff, which is approximately thirty-six (36%) of Plaintiffs total alleged minimum wage/overtime owed, is reasonable. *See, e.g.*, *Santos v. YMY Mgmt. Corp.*, No. 20 Civ. 1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement amount equal to approximately 39% of Plaintiff's total alleged minimum wage/overtime owed); *see also Gervacio v. ARJ Landry Services Inc.*, No. 17-cv-9632(AJN), 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding that a settlement amount of less than half of the base damages that the plaintiff claimed she was entitled to was reasonable).

### B. Attorney's Fees

*Second,* the Court finds that the attorney's fees sought are reasonable and appropriate. "In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). Courts in this Circuit routinely approve of one-third contingency fees for FLSA cases. *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126, 2014 WL 6621081, at *3 (E.D.N.Y.

6

Nov. 12, 2014) (citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)); *see also Fischer v. SD Protection Inc.*, 948 F.3d 593, 602 n.8 (2d Cir. 2020) (citing cases); *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate").

Here, Plaintiffs' counsel requested $3,000 out of the $10,000 settlement and submitted timesheets conveying the attorneys' billing rates, description of services and the hours worked. (DE 13-2.) The $3,000, which constitutes one-third of the settlement, includes the attorneys' fees and costs incurred during the litigation. (DE 13-1 at 2.) Thus, based on this Circuit's reliance on the one-third contingency fee standard, Plaintiffs' counsel's request is reasonable under the percentage method.

But "even when the proposed fees do not exceed one third of the total settlement amount, courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Navarro Zavala v. Trece Corp.*, No. 18-CV-1382 (ER), 2020 WL 728802, at *2 (S.D.N.Y. Feb. 13, 2020) (quotation and citation omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case [ ]." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388-89 (S.D.N.Y. 2013) ("Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable.") (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). Here, the submitted records reflect that Lina Stillman, the founding attorney of Stillman Legal P.C., with 10 years of experience in employment matters with a focus on wage and hour suits, billed 16.9 hours working on this case at a rate of $350.00 per hour. (DE 13-2.) Given Ms. Stillman's extensive experience with wage and hour litigation, the Court also finds the $350 hourly rate for Stillman to be reasonable. *See Hall v. ProSource Tech., LLC*, 14-CV-2502 (SIL), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (noting 6 years ago that "Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates . . . ") (citation omitted); *Kim v. Choi*, 2021 WL 1759830, at *2 (S.D.N.Y. May 4, 2021) (finding that "hourly rates of approximately $150 to $450—depending on experience—for attorneys working on FLSA litigation are typically approved in this district").

Multiplying the billed hours by $350 per hour yields a lodestar calculation of $5,915. Therefore, based on the total lodestar amount, the Court finds that the requested attorney's fees of $3,000 are objectively reasonable. *Cf. Cohan v. Columbia Sussex Mgmt., LLC*, 12-CV-3203, 2018 WL 4861391, at *5 (E.D.N.Y. Sept. 28, 2018) ("Courts regularly award lodestar multipliers from two to six times lodestar") (citing *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *16 (S.D.N.Y. Sept. 16, 2011).

### C. Avoidance of Burdens and Expenses

*Third*, considering the early stage at which this matter has reached a proposed settlement, the Court finds that parties will undoubtedly avoid extensive litigation costs by avoiding further discovery, document drafting, researching, and engaging in further communications. Courts

have recognized that discovery and trial practice may "meaningfully decrease possible recovery for plaintiffs." *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299 (E.D.N.Y. 2015). Thus, this settlement allows the parties to avoid the inevitable burdens and expenses in preparing the parties' claims and defenses.

### D. Seriousness of the Litigation Risks

*Fourth*, there is a *bona fide* dispute between the parties, and settlement is a means of avoiding significant litigation risks for both. There exist, and indeed the parties acknowledge as much, genuine issues of fact since the Defendant produced records of actual days and hours worked by Plaintiff that allegedly call into question Plaintiff's claims. (DE 14 at 2.) Plaintiff denies the accuracy of the records but acknowledges that the Defendant's evidence could provide Defendant with a colorable argument. (DE 14 at 2.) Therefore, a trier of fact could deem Defendant's arguments persuasive, and thus, Plaintiff's potential recovery could be substantially impacted. Settlement, therefore, is an effective means to avoid the real risks and costs to both parties in continuing to litigate this matter through trial and beyond. (*See* DE 14 at 2.)

### E. Arms-Length Negotiation

*Fifth*, the parties represented that they have engaged in arms-length bargaining to achieve the settlement. (DE 13, DE 14.) The parties state that the settlement reflects a desire by both parties to settle and compromise all of Plaintiff's claims asserted in the case. (DE 14 at 3.) As a result of their extensive electronic settlement negotiations while represented by counsel, the parties were able to come to an agreement, and filed a proposed settlement agreement on July 14, 2022. (*Id.*) Therefore, the record supports the Court's finding that this settlement agreement was the product of arms-length bargaining.

9

### F. No Fraud or Collusion

*Sixth*, the parties, as represented by counsel, negotiated in good faith, and agreed upon the terms within the settlement agreement. (DE 14 at 3.) The parties represent, and indeed the ultimate number reached reflects, that they each made compromises on their positions to achieve a fair and reasonable settlement. A review of the record shows no indication that the settlement is a product of fraud, coercion, or collusion.

Additionally, the *Wolinsky* factors that typically weigh against settlement are not in play here. First, there is no indication that there are others similarly situated to Plaintiff. Second, given the accumulated expenses, resources, and hours spent during discovery and the settlement process, it is likely that Defendant will be deterred from violating the FLSA—as alleged by Plaintiff—in the future. Lastly, the Plaintiff's circumstances will not recur as the Plaintiff is no longer employed by the Defendants.

While the above-mentioned *Wolinsky* factors weigh in favor of this Court approving the instant motion, the proposed settlement does contain a problematic general release provision. Therefore, the undersigned respectfully recommends that the motion for settlement approval be approved with the limitation on the release stated below.

## II. Provisions of the Settlement Agreement

### A. The No Defamatory Statements Provision

The settlement agreement contains a provision that prevents the parties from making defamatory statements with respect to each other, and in Plaintiff's case, with respect to the other Releasees. (DE 13-1 at 4.) The provision provides in part that this limitation is "[s]ubject to the parties' unfettered right to openly and truthfully discuss this Lawsuit and the claims and circumstances surrounding it . . . ." (*Id.*)

A non-defamation provision is a type of confidentiality provision similar to but less restrictive than a non-disparagement provision. Courts have held that non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others)." *Felix v. Breakroom Burgers & Tacos*, No. 15 CIV. 3531 (PAE), 2016 WL 3791149, at *3 (S.D.N.Y. Mar. 8, 2016). If a non-disparagement provision "broadly bars plaintiffs from making any negative comments about defendants, . . .'it must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'" *Id.* (citing to *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015); *see also Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (approving a settlement agreement that specifically stated "[a]ny party is allowed to make truthful statements related to or concerning the Action"); *Cortes v. New Creators, Inc.,* 15-CV-5680, 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("[A]lthough the Agreement contains a non-disparagement provision, it includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case.").

The redeeming feature of the provision at issue is that it contains a carve-out for truthful statements. This obviates the concern that Plaintiff would be prevented from truthfully speaking with others about his experience litigating the case and is therefore permissible.

### B. General Release Provision

The chief deficiency of this *Cheeks* application is the broad non-mutual release provision contained within the settlement agreement. In *Cheeks*, the Court "specifically cited to overbroad releases that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues' as highlighting the 'potential for abuse' in FLSA settlements." *Torres v. Mc Gowan Builders*, No.

11

18 CV 6099 (RML), 2020 WL 5369056, at *3 (E.D.N.Y. Sept. 8, 2020) (citing *Cheeks*, 796 F.3d at 206) (rejecting a FLSA settlement agreement that included, *inter alia*, a general release of claims). Accordingly, Courts in this circuit have routinely rejected FLSA settlement agreements containing such general releases. *Id*.

For instance, in *Sapon*, the Court rejected an FLSA settlement agreement that contained "a sweeping 'No Further Actions or Claims' provision . . . as well as [an] overbroad 'Mutual Release of Claims by Parties' provision[]." *Sapon v. Uncle Paul's Pizza & Cafe Inc.*, No. 18-CV-4026 (VSB), 2020 WL 9048725, at *2 (S.D.N.Y. May 6, 2020). In finding that the FLSA settlement agreement was not fair and reasonable, the Court explained:

> The provisions in the parties' settlement agreement are too broad to survive judicial scrutiny. Pursuant to these provisions, Plaintiff releases Defendants not only from wage-and-hour claims, but also from 'any civil action, charge, or other proceeding … based upon or arising out of any claims … as of the date of this Agreement.

*Id.* at *3.

Similarly, in *Camacho*, in declining to approve a FLSA settlement agreement, the Court noted "the language of the Agreement's general releases is far too sweeping to be 'fair and reasonable.'" *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592 LAK, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014). In particular, the Court explained that "[t]he waiver encompasses all maters 'from the beginning of the world to the effective date of this Agreement.'" *Id.* The court warned that "[t]hese releases, if approved, would go far beyond terminating the present litigation. They purport to waive any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Id.* The court described its obligation to "police unequal bargaining power between employees and employers." and found that "such broad releases are doubly problematic." *Id.* Therefore, the court held that approval the FLSA settlement was inappropriate and stated that it would not "countenance

12

employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute." *Id.*

Conversely, in *Lola*, the court granted final approval of an FLSA settlement which contained a broad general release. *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). However, in *Lola*, the court explained that there is "nothing inherently unfair about a release of claims in an FLSA settlement." *Id.* at *2. Ultimately, the court found that because the settlement agreement provided for both a waiver of claims against Defendants and a waiver of claims against Plaintiffs, the agreement did not unfairly benefit only the Defendants. *Id.* In applying the *Wolinsky* factors, the court concluded that "mutual releases of claims in the Settlement are fair and reasonable, and do not run afoul of the FLSA's purpose of preventing abuse by employers." *Id.* Thus, there was no reason for the court to withhold approval of the settlement. *Id.*

In the instant case, the settlement agreement contains a broad non-mutual release of all claims:

> In consideration of and as a material inducement for the Settlement Payment, Plaintiff, to the fullest extent permitted by law, forever waives, releases and discharges, and covenants not to sue, the Defendants and their predecessors, successors, assigns, parents, subsidiaries, heirs, representatives and other affiliates, and each and every of their respective past, present, and future, employees, contractors, consultants, associates, managers, officers, business partners, owners, members, shareholders, vendors, divisions, parents, subsidiaries, predecessors, successors, assigns, investors, representatives, plans, insurers, fiduciaries, attorneys, estates, trustees, family members, heirs, representatives, and agents (collectively, the "Releasees"), from any and all claims, demands, causes of action, fees, damages, liabilities, expenses (inclusive of attorneys' fees), obligations, debts, judgments, promises or agreements of any nature, known or unknown to Plaintiff, that Plaintiff may have, ever has had or hereafter may have, from the beginning of the world to the date Plaintiff executes this Agreement, arising out of or relating to any claim or allegation that was or could have been asserted in the Lawsuit, including, without limitation, any claim under the FLSA or the NYLL or for compensation. This Agreement covers claims of which Plaintiff currently may or may not have knowledge, but does not apply to the

13

> Defendants' obligations pursuant to this Agreement. This waiver, release and promise not to sue is binding on Plaintiff and Plaintiffs heirs, legal representatives, insurers, agents, and assigns.

(DE-13-1 at 3.)

The extent and breadth of this provision seemingly violates *Cheeks*. First, pursuant to this provision, the Plaintiff unilaterally agrees to release all claims that Plaintiff could potentially bring against the Defendant, and a laundry list of others. This provision is far afield from the mutual release in *Lola*. *See Lola*, 2016 WL 922223, at *2. The language of the agreement goes far beyond terminating the instant litigation. It is more like the releases expressly rejected in *Sapon* and *Camacho* as violative of *Cheeks*. *See Sapon*, 2020 WL 9048725, at *2; *Camacho*, 2014 WL 6985633, at *4.

Second, release provisions containing language regarding a broad range of individuals have also been held to be overbroad. *See, e.g.*, *Garcia v. Good for Life by 81, Inc.*, No. 17-CV-07228(BCM), 2018 WL 3559171, at *4 (S.D.N.Y. July 12, 2018) ("To pass muster under *Cheeks*, ¶1(b) must be limited to include only the named defendants, the corporate defendants' predecessors and successors, and any other person or entity that plaintiffs claim, or may claim, to have been their employer for purposes of their work for [the company]").

Accordingly, the provision as written is contrary to public policy and renders the terms of this settlement agreement unfair and unreasonable. However, all is not lost, since the settlement agreement contains a severability provision (*see* DE 13-1 at 4), under which the Court could sever offending provisions or limit overboard ones, and approve the remainder of it. *See e.g.*, *Garcia*, 2018 WL 3559171, at *2 (utilizing a severability and modification clause to modify the release provisions and sever other provisions that the court deemed were not fair and reasonable). The provision here provides:

14

> If any provision of this Agreement, or any part thereof, is held by a court of competent jurisdiction to be invalid, void, unenforceable or against public policy for any reason, this Agreement shall be construed without such term or condition and the remainder of the Agreement shall remain in full force and effect and shall not be affected, impaired or invalidated. If any court construes any provision of this Agreement to be unenforceable by reason of being overbroad, such court shall reduce the breadth of such provision to the extent necessary to render it enforceable and, in its reduced form, such provision shall then be enforced.

(DE 13-1 at 4.)

The Court is mindful of its duty to avoid "blue-penciling" and approving FLSA settlement agreements with terms to which the parties did not contemplate or consent. In *Fisher*, the court stated that when a district court "concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597. There the concerns included "imposing terms on the parties to which they did not agree," or going beyond the "express terms" of the agreement—a power the court does not possess." *See Fisher*, 948 F.3d at 605 (noting that courts must not "alter or go beyond the express terms of the agreements, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.").

But here, the situation is markedly different—the parties offered the pen. The *Fisher* Court said nothing of the Court's ability to "reform one of the Agreement's terms, such as the scope of the parties' releases, where – as here – the parties unambiguously granted the Court that power in a severability clause." *Souffrant v. 14-15 Mertens Place Corp.*, No. 19-CV-5482 (BCM), 2020 WL 1166231, at *3 n.2 (S.D.N.Y. Mar. 11, 2020). The same concerns are not present where the express terms of the settlement agreement, which was written by the parties, grants the court express authority to sever or modify certain provisions to ensure the settlement is fair and reasonable. Such a situation involves the Court acting with the express permission of

15

the parties and pursuant to the terms of the contract rather than the Court unilaterally imposing its own will or terms upon the parties contrary to the contractual text.

Here, the parties expressly imbued the Court with the authority to "reduce the breadth of such provision to the extent necessary to render it enforceable." (DE 13-1 at 4.) Therefore, the parties clearly contemplated, and acquiesced, to a settlement agreement that may include provisions more limited than those written. The Court elects to use this provision to carry out the parties' intent of achieving a fair and reasonable settlement. *See Bland v. Doyle*, No. 20-CV-03226, 2021 WL 3501091, at *1 (S.D.N.Y. Aug. 9, 2021) ("The Court concludes that the agreement's general release is not fair and reasonable. However, because this provision is severable under the terms of the agreement, the Court otherwise approves it."). The Court finds this procedure is especially fitting here since the parties have the opportunity to object to this Report and Recommendation if they disagree with the Court's construction of their violative release provision.

Accordingly, the Court construes the release provision (Section 3, *see* DE 13-1 at 3.) of the settlement agreement as follows: The extent of Plaintiff's release as to the Defendant is limited to the wage-and-hour claims at issue in this action, or those related thereto, up to the date of the settlement agreement. The breadth of the releases extends to "only the named defendants, the corporate defendants' predecessors and successors, and any other person or entity that plaintiffs claim, or may claim, to have been their employer for purposes of their work" for the Defendant. *See Garcia*, 2018 WL 3559171, at *10 (limiting a overbroad mutual release provision).

## CONCLUSION

Based on the foregoing, the undersigned recommends that the parties' joint motion for approval of the Agreement be approved, and the problematic general release provision be construed in accordance with this Report and Recommendation. Alternatively, as written, the undersigned respectfully recommends denial of the settlement agreement without prejudice to parties' ability to renew their joint motion for approval if it is revised accordingly.

### I. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
November 27, 2022

                                              **Respectfully recommended:**

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

17